PHILLIPS *v*. TRAMBLE.

5-523                                                     273 S. W. 2d 400

Opinion delivered December 13, 1954.

*Claude F. Cooper,* for appellant.

*Ed B. Cook,* for appellee.

J. SEABORN HOLT, J.   Appellee, Ed Tramble, brought this suit to quiet title to two lots in the City of Blytheville.   He alleged in his complaint: "That at the time of purchase plaintiff was, and has been for seven or eight years prior thereto, in ill health, with prostate trouble; that it has become so acute that several physicians had given him up as a hopeless case, and Dr. Brounson told plaintiff that he could not live; that because of that advice, and because of his age, the deed of conveyance was executed to the said Christine (his wife), with the express agreement and understanding that should plaintiff survive a contemplated operation and regain his health, that the parties would go to a lawyer's office and have the deed reformed so as to create an estate by the entirety in deed, as well as it was in fact; that said Christine was to hold a resulting trust in favor of the husband until he regained his health; that the

reason for this was that plaintiff had heirs at law and he thought at the time they might get some of the property.

"That in March, 1952, plaintiff went to the hospital, submitted to surgery and has completely regained his health, but that the said wife, within three weeks after plaintiff returned home, took sick and died, leaving surviving her as her heirs at law the defendants herein, who claim an undivided one-half interest in said real property."

Appellants answered with a general denial. Trial was had and at the close of appellee's (plaintiff's) testimony, appellants (defendants in the trial court) without offering any testimony, filed motion challenging the sufficiency of the evidence, (under § 27-1729, Sup. Ark. Stats., 1947)—in effect, a demurrer thereto. The court overruled appellants' motion, whereupon they elected to stand on their motion and have appealed.

Tramble (72 years of age) and his wife, Christine, (Negroes) were married in 1941. They had no children by this marriage. Christine had two brothers, Oliver and David P. Phillips, (appellants). Appellee and Christine lived together until Christine's death in May, 1951. Appellee, by steady employment, accumulated sufficient funds with which to purchase the two lots which they occupied as their homestead. The deeds to this property (one for each lot) were executed in Christine's name December 16, 1949. The full purchase price was paid by appellee at the time the deeds were executed and delivered.

It appears undisputed from the testimony that at the time the property was purchased, Ed Tramble was facing a most serious operation and had been advised by his doctor that his recovery was very doubtful. Before going to the hospital, appellee advised the grantor that the deed was to be made to his wife, and should he recover, the property was to be put in their joint names. He testified: "Q. Tell the Court why you put the lots in Christine's name. A. The reason I put the lots in

Christine's name, Dr. Brounson on Ash was my doctor, and he told me I was going to die and I said, 'Miss Chris, you take the deeds in your name, don't put mine because I have got to be operated on and if I live and get well and get back home we will go to the Court House and have them straightened up in both our names.' . . . Q. You intended for Christine to have these lots when you had them put in her name? A. If I had died, sure I wanted her to have them. If I died. Q. But that's the only condition? A. If I didn't I wanted me and her both to have them. If I died they wouldn't do me any good but if I didn't die I wanted both of us to have them.'' There was other testimony tending to corroborate appellee by Lawrence Fulgham, the grantor of the deeds, and Mary Donaldson. Mary Donaldson, not related to the parties, testified: ''A. Uncle Ed and Christine were visiting me about two nights after they bought the lots and Uncle Ed said he had to go to the hospital and he said, 'I am going to put these two lots in Christine's name only, because I am not looking to get back.' And she said, 'Honey, all sickness is not unto death.' And he said, 'I love you and I want you to have a home and no trouble.' And he said, 'If I make it back home we will change the deed and if I die, ain't nobody can give you no trouble.' And Christine said, 'If you make it back it will be Ed and Christine.' Q. Did they later put a house on those two lots? A. They built a 6-room house on one of the lots and the other lot is vacant and they raise a garden on the other lot. Q. Do you. know whose money it was that paid for the house? A. Uncle Ed's.''

Less than three weeks after appellee returned from the hospital, his wife died rather suddenly, leaving the deeds in her name.

On the testimony presented by appellee, the Chancellor correctly found: ''It was the intention of the parties for the wife to hold the legal title to the property only in the event that Ed did not survive the operation and that it was the intention of the parties that if he did survive the operation that the property should be held

as an estate by the entirety,'' and that a resulting trust arose, an equitable estate by the entirety resulted. The court decreed that appellants had no title or interest in the property in question ''but that fee simple title thereto vested in Ed Tramble.''

In *Milner* v. *Freeman, et al.*, 40 Ark. 62, one of our earliest cases involving a resulting trust, the rules of law there announced have been consistently followed by this court. It was there said: ''When a man buys an estate and takes the deed in the name of a stranger, a trust results by operation by law to him who advances the purchase money. If, however, the nominal purchaser is a child or the wife of the person from whom the money comes, it is presumed to have been an advancement or a gift. But this presumption is not conclusive. It may be rebutted by antecedent or contemporaneous declarations and circumstances which tend to prove the intention of the person who furnished the money to buy the estate that the grantee should hold as a trustee and not beneficially for himself. . . . Nothing is more firmly established than that a resulting trust may be established by parol. . . . The *cestui que trust* not being a party to the deed, is not estopped by its recitals or covenants to prove all the facts from which a trust may be inferred. . . . Resulting trusts are specially excepted from the operation of the Statute of Frauds. Gantt's Dig., § 2963 (Now § 38-107, Ark. Stats., 1947.) . . .

''In order to create a trust of this nature, payment of the purchase money must be made at the time of the purchase. By this it was meant that the trust must arise, if at all, from the original transaction, at the time it takes place and at no other time; and that it cannot be mingled or confounded with any subsequent dealings. . . .

''The trust arises out of the circumstances that the money of the real purchaser, and not of the grantee in the deed, formed the consideration of the purchase and became converted into land.

"Every case of this clause ultimately turns upon the question whether it was the intention of the person who paid the money to confer the beneficial interest upon another or to secure a trust for himself."

Here, as indicated, appellants offered no testimony to contradict appellees' *prima facie* showing of a resulting trust and under our holding in *Werbe v. Holt,* 217 Ark. 198, 229 S. W. 2d 225, reaffirmed in *City of Blytheville v. Parks,* 221 Ark. 734, 255 S. W. 2d 962, in construing Act 470 of 1949 (§ 27-1729, Sup. Ark. Stats., 1947), we must affirm the decree if we find substantial evidence to support the Chancellor's findings. We hold that there was ample testimony to support these findings and the decree which is now final.

Affirmed.